UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARGARET JONES | ) |
| Plaintiff | ) ) ) ) |
| v. | ) No.: |
| UNITED STATES OF AMERICA, | ) ) ) ) |
| Defendant | ) ) |

## COMPLAINT AT LAW

Now comes the Plaintiff, MARGARET JONES, by and through Philip J. Fowler of KARLIN, FLEISHER & FALKENBERG, LLC, her attorney, and for her COMPLAINT AT LAW against Defendant, UNITED STATES OF AMERICA (hereinafter U.S.), she states the following:

## JURISDICTION AND VENUE

1. On or about December 21, 2016, Plaintiff, MARGARET JONES, was a resident of the City of Chicago, County of Cook, State of Illinois, and is, therefore, a resident of the Northern District of Illinois, Eastern Division.

2. During all times relevant, Plaintiff, MARGARET JONES's primary care facility was Christian Community Health Center, located at 9718 S. Halsted Street, Chicago, Illinois 60628, an Illinois not for profit company which provided services in the Northern District of Illinois, Eastern Division.

3. Dannon Martin, PA-C, during all times relevant herein, was a Licensed Physician Assistant and employee of the Christian Community Health

1

Center in the City of Chicago, County of Cook, State of Illinois and provided Physician Assistant services to general public within the County of Cook, State of Illinois in the Northern District of Illinois, Eastern Division.

4. During all times relevant, Christian Community Health Center had Federally Qualified Health Center Status providing it with Federal Tort Claims Act deemed status.

5. Plaintiff brings her claim against the U.S. pursuant to the Federal Tort Claims Act, 28 U.S.C. section 2671, et seq., and 28 U.S.C. section 1346(b)(1), for monetary damages as compensation for personal injuries caused by negligent actions and/or omissions of persons and entities deemed employees of the U.S. under circumstances wherein the U.S. would be liable to the Plaintiff under the laws of the State of Illinois.

6. Venue is proper in that all of the acts and/or omissions alleged herein occurred in the Northern District of Illinois, Eastern Division.

7. Plaintiff has fully complied with the provisions of 28 U.S.C. section 2675 of the Federal Tort Claims Act.

8. This suit is timely in that Plaintiff timely serviced notice of her claim on December 20, 2018 with the United States Department of Health and Human Services. Receipt of said notice was acknowledged in writing in June of 2019. More than six months has passed from the filing of the claim and Plaintiff has not received a final written offer or final denial of her claim.

2

## FACTUAL BASIS OF THE CLAIM

9. During all times relevant, Plaintiff, MARGARET JONES's primary care facility was Christian Community Health Center, located at 9718 S. Halsted Street, Chicago, Illinois 60628, where she went for her well-care visits between July 22, 2014 and December 21, 2016.

10. On or about December 21, 2016, Plaintiff MARGARET JONES, presented to Christian Community Health Center, where she received treatment from Dannon Martin, PA-C. Dannon Martin, PA-C, was an employee and/or agent of Christian Community Health Center.

11. On her visit of December 21, 2016, Plaintiff, MARGARET JONES, was seen by Dannon Martin, PA-C. Plaintiff revealed to Dannon Martin, PA-C that she had been feeling ill for several days with flu-like symptoms. She stated that she had a productive cough which had been worsening for days, that she had shortness of breath on exertion, that she had not been using her CPAP machine because she needed a replacement, and that she would not be seeing her pulmonary doctor for two months.

12. On December 21, 2016 Plaintiff, MARGARET JONES, had a pulse oximetry reading of 86%, meaning she was hypoxic.

13. On December 21, 2016, her history and medical chart revealed that she had a history of hypoxia, COPD, asthma, sleep apnea, hypertension and diabetes, used oxygen and a CPAP machine, had used an inhaler and nebulizer, and was under the care of a pulmonary doctor.

14. On December 21, 2016, her history and medical chart revealed that she was on a combination of medications that could contribute to dehydration and kidney failure in a person who was not healthy, like MARGARET JONES. For instance, her chart listed the following medications: metformin for diabetes (usage of metformin in a patient who is dehydrated is known to be associated with metabolic acidosis), furosemide (a water pill which can lower blood pressure) 600 mg of ibuprofen (a large dose), and losartan (a blood pressure medicine).

15. When Dannon Martin, PA-C saw Plaintiff, MARGARET JONES, on December 21, 2016, Dannon Martin, PA-C was aware that MARGARET JONES was hypoxic and in respiratory compromise, not using her CPAP and would not be seeing a pulmonary doctor for two months.

16. On December 21, 2016, Dannon Martin, PA-C, started Plaintiff, MARGARET JONES, on a ZPAC (the antibiotic azithromycin). The ZPAC prescribed was insufficient for person as sick as MARGARET JONES was and who had a pulse oximeter reading of 86%. Dannon Martin, PA-C also prescribed a steroid that can be given to reduce inflammation in the lungs to be taken orally. When taken by mouth, the steroid would not be effective for several

days. Furthermore, Dannon Martin, PA-C gave MARGARET JONES a nebulizer treatment which is designed to open up brachial tubes, but then never checked MARGARET JONES's oxygen saturation after the treatment in order to assess whether it was effective enough before she was sent home. Dannon Martin, PA-C then discharged Plaintiff, MARGARET JONES, home.

17. MARGARET JONES suffered over the next several days after being sent home from the clinic on December 21, 2016 such that on or about December 24, 2016, an EMT was called to the house because MARGARET JONES could hardly function and could not even walk to the bathroom and had collapsed.

18. While in the ambulance on the way to in the hospital, MARGARET JONES had suffered acute respiratory arrest and stopped breathing after which she went into cardiac arrest and her heart stopped too.

19. When MARGARET JONES arrived at the hospital, Little Company of Mary, she had a lethal level of potassium in her system – it was over ten. A potassium level of over 6 is life-threatening. MARGARET JONES also had lactic acidosis from not breathing and metabolic acidosis from organ failure.

20. An echocardiogram and stress test at the hospital showed that her heart was good. Her heart, then, had stopped from metabolic disease caused by her elevated potassium level and directly attributable to her care and treatment, and not from primary cardiac disease.

21. Due to the lack of care and treatment received by MARGARET JONES for her respiratory compromise, hypoxia and air hunger on December 21, 2016, she became dehydrated and her oxygen levels got worse until she stopped breathing, her kidneys failed because of poor oral intake, she suffered from acidosis, her potassium levels increased, and she suffered a heart attack, near death and kidney damage as a result.

22. At all times relevant herein, Defendant, U.S., through Christian Community Health Center and its employee, Dannon Martin, PA-C. owed Plaintiff, MARGARET JONES, a duty to exercise reasonable care in providing medical services to MARGARET JONES.

23. Notwithstanding the aforesaid representations, Defendant, U.S., committed one or more or a combination of the following negligent acts or omissions, to-wit:

    a. Failed to proscribe and/or treat with the proper administration, combination and strength of medications including intravenous medication;

    b. Failed to prescribe and/or treat patient with pressurized breathing;

    c. Failed to prescribe and/or have the patient undergo a chest X-ray;

    d. Failed to recheck the patient's oxygen saturation after nebulizer treatment;

    e. Failed to use proper antibiotics in treating the patient;

  f. Failed to properly hydrate the patient and ensure that the patient was able stay properly hydrated upon discharge;

  g. Failed to realize and understand that given the patient's condition and regimen of medications that her discharge home in her condition could or would lead to dehydration and acidosis;

  h. Failed to send the patient to the emergency room rather than send her home;

  i. Failed to hospitalize the patient rather than send her home;

  j. Was otherwise negligent.

24. As a direct and proximate result of one or more or a combination of the negligent or careless acts or omissions, as aforesaid, Plaintiff, MARGARET JONES, suffered from increased potassium levels, lactic acidosis and metabolic acidosis, respiratory arrest, cardiac arrest and kidney damage.

25. As a direct and proximate result of those medical conditions, Plaintiff, MARGARET JONES, incurred medical expenses, endured pain and suffering, experienced a loss of normal life, experienced disfigurement, and will continue to suffer those damages into the future as a result of the Defendant's conduct.

26. Attached is an Affidavit pursuant to Section 2-622 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-622.

Wherefore, Plaintiff, MARGARET JONES, prays that this Honorable Court enters a judgment against Defendant, UNITED STATES, in a sum of two million dollars ($2,000,000.00), plus the cost of this lawsuit, and grants such other,

7

further, and different relief as this Court deems equitable and just under the circumstances.

Respectfully submitted,

KARLIN, FLEISHER & FALKENBERG, LLC
Attorneys for Plaintiff

BY: _____
Philip J. Fowler

111 W. Washington St., Suite 950
Chicago, IL 60602
312-346-8620
pjf@kff-law.com
ARDC # 6192946

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARGARET JONES | ) |
| Plaintiff | ) ) ) |
| v. | ) No.: |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant | ) ) ) |

## AFFIDAVIT

Philip J. Fowler, being first duly sworn, states as follows:

I am an attorney employed by KARLIN, FLEISHER & FALKENBERG, LLC, who are the attorneys for Margaret Jones.

I have consulted and reviewed the facts of the case with a healthcare professional whom I believe is knowledgeable in the relevant issues in this particular action, practices, or has practiced in the last six years, in the same area of medicine that is at issue in this particular action and is qualified by experience in the subject of this case.

The reviewing healthcare professional has determined in a written report, after a review of the medical record, that there is a reasonable and meritorious cause for the filing of such an action.

I have concluded on the basis of the reviewing healthcare professional's review and consultation, that there is a reasonable and meritorious cause for the filing of this action.

9

A copy of the reviewing healthcare professional's report (with information which would identify the reviewing healthcare professional being deleted) is attached to this Affidavit.

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth herein are true and correct.

_____
Philip J. Fowler

Philip J. Fowler (ARDC#6192946)
KARLIN, FLEISHER & FALKENBERG, LLC
Attorneys for Plaintiff
111 W. Washington, Suite 950
Chicago, IL 60602
312-346-8620
Fax: 312-346-8743
Email: pjf@kff-law.com

December 19, 2018

Philip J. Fowler
Karlin, Fleisher & Falkenberg, L.L.C.
111 West Washington Street, Suite 950
Chicago, Illinois 60602

**Re:** ***Margaret Jones – Your File No. 40070***

Dear Mr. Fowler:

I am a physician licensed to practice medicine in all of its branches in the State of Illinois and have practiced in the last six (6) years in the area of internal medicine. I am knowledgeable concerning the standard of care, methods, procedures and treatments as they relate to issues of the care and treatment involved in this matter. I have also read and reviewed documents forwarded to me pertaining to the care of Margaret Jones, including:

1) Christian Community Health Center records; and
2) Little Company of Mary Hospital records.

Based upon my education, training and experience, and my review of the aforesaid records, it is my opinion, based upon a reasonable degree of medical certainty, that the care provided by Christian Community Health Center and its agents and/or employees and Dannon Martin PA-C fell below the standard of care, and as such, there is a reasonable and meritorious basis for the filing of an action against Christian Community Health Center and Dannon Martin PA-C and the medical centers, medical group and/or the hospitals which employed them or for which they acted as agents.

The records reveal that Ms. Jones had been feeling ill for days with flu-like symptoms, so she went to her primary care facility on December 21, 2016 and seen there by Dannon Martin PA-C who gave her antibiotics. Four days later, she collapsed and was rushed by ambulance to Little Company of Mary Hospital. She suffered a heart attack and kidney failure requiring follow up dialysis, all of which was a result of the negligent care of Christian Community Health Center and/or Dannon Martin PA-C.

Ms. Jones' medical history prior to her visit on December 21, 2016 demonstrated that she suffered from pulmonary issues which made her a high-risk patient. For instance, on July 22, 2014, she presented to the clinic with COPD, asthma and sleep apnea. She was morbidly obese, hypertensive and had diabetes. Further her triglycerides (fat in her blood) were high at 670 (four times higher than they should be). It will also be seen that she was also hypoxic, meaning her blood oxygen level was low.

Ms. Jones came in for a well exam on October 15, 2015 and her oxygen level was 89%. A patient with a blood oxygen level below 90% is considered hypoxic and a healthy normal level is between 95% and 97%. When Ms. Jones returned for a check up on December 16, 2014, the history revealed that she had a pulmonary doctor and was oxygen dependent. She was on three liters of oxygen and was seeking an CPAP device for her sleep apnea. When she came to the clinic for routine follow up visit on March 11, 2015, she stated that she was seeing a pulmonologist, was on three liters of oxygen a night, and was getting nebulizer treatment. In short, she was compromised from a pulmonary perspective. Further, her labs from the day show that her hemoglobin was over 15 (in a woman the normal amount of hemoglobin is between 12 and 13). This reading is significantly higher than normal. Hemoglobin is red blood which carries oxygen from the lungs to the rest of the body. When oxygen levels are low, the body compensates by making more red blood cells. Ms. Jones' hemoglobin was high because she was hypoxic. When red blood cells are high, a patient is more susceptible to clotting, stroke and heart attack. When Ms. Jones returned on March 14, 2016, her pulse oximeter reading was 82% while she was on portable oxygen and a nebulizer with worsening shortness of breath since running out of her prednisone. On the August 3, 2016 wellness visit, she complained of a dry cough and worsening shortness of breath for one week while using a nebulizer or inhaler four to five times a day. When she returned on October 21, 2016, she had been wheezing for two weeks associated with shortness of breath. When she returned on November 29, 2016, she reported that the day after the October 21, 2016 visit, she went to the ER due to an exacerbation of asthma.

**On December 21, 2016, Ms. Jones returned to Christian Community Health Center and saw Dannon Martin PA-C. On that date, Dannon Martin PA-C and Christian Community Health Center engaged in a number of clear violations of the standard of care that led Ms. Jones' collapse on Christmas day and her being taken to the emergency room at Little Company of Mary. These violations of the standard of care proximately caused Ms. Jones' heart attack and decreased kidney function resulting in the need for dialysis.**

When Ms. Jones came to the clinic for her check up on December 21, 2016, she had a non-productive cough which had been worsening for four days. She had dyspnea on exertion, meaning shortness of breath when she exerted herself. Ms. Jones also had not been using her CPAP machine for some time because she could not get a machine replacement. She also reported that she would not be seeing her pulmonary doctor for two months. Her pulse oximeter reading was 86% Dannon Martin PA-C, then, knew that Ms. Jones was in respiratory compromise, not using her CPAP and would not be seeing her pulmonary doctor for two months.

Ms. Jones was then started on a ZPAC (the antibiotic azithromycin) and prednisone, which is a steroid. A ZPAC is the standard dose for a healthy person who is being treated for a respiratory infection as an outpatient. A person, like this patient, who is not healthy and suffering from a respiratory infection would not be expected to respond to azithromycin. Further, steroids,

given to reduce inflammation in the lungs, when taken by mouth would not be effective for several days. In short, the medicine prescribed was not sufficient for a person with these symptoms and a pulse oximeter reading of 86 percent. Furthermore, the patient was given a nebulizer treatment designed to open up bronchial tubes, but the patient's oxygen saturation is not checked after the treatment to assess whether it was effective enough before she was sent home.

In short, this patient needed, and the standard of care required, that the patient 1) be given stronger, intravenous medicine, 2) be given pressure breathing, 3) undergo a chest X-ray, 4) have a recheck of her oxygen saturation after the nebulizer treatment, 5) be put on different antibiotics and 6) be sent to the ER and hospitalized instead of being sent home as she was.

The hospital records reveal that the patient suffered over the next few days after being sent home from the clinic on December 21, 2016 and that the EMT was called because the patient could hardly function; she couldn't even walk to the bathroom. She collapsed, the EMT was called and she had an arrest in the ambulance and stopped breathing. She suffered an acute respiratory arrest and then later a cardiac arrest, that is, she stopped breathing and then her heart stopped too. She was then resuscitated and brought into the hospital.

When she arrived at the hospital, she had a lethal level of potassium in her system, her kidneys had failed and the oxygen levels in her blood were life-threateningly low. The patient had respiratory acidosis meaning she had lactic acid from not breathing and metabolic acidosis from organ failure.

When Ms. Jones presented to Little Company of Mary, her potassium level was over ten. A potassium level of over 6 is life-threatening. (Potassium is what is given to death row inmates to make their heart stop). As importantly, at Little Company of Mary, Ms. Jones underwent an echocardiogram and a stress test which show that her heart was good. In other words, her heart did not stop because of primary cardiac disease, but because her potassium level was over ten, that is, this was a metabolic disease directly due to the negligent treatment on December 21, 2016.

Ms. Jones arrested because she was not properly treated for respiratory compromise and her breathing issues were not addressed. Because of her hypoxia and air hunger, she suffered at home for four days without the ability to sustain proper levels of food and drink, she became increasingly dehydrated while on medicine that demanded that she be able to continue an intake of fluids and food.[1] Her low oxygen levels got worse and worse until she stopped

---

[1] It should be noted at this point that when the patient was seen at the clinic on December 21, 2016 (before her hospitalization four days later), her medicines were listed in her chart and it was known that she was on metformin for diabetes, furosemide (a water pill which can lower blood pressure), 600 mg of ibuprofen (a large dose) and losartan (a blood pressure medicine). These medicines are appropriate for a person who is healthy, but it is known that these medicines can also contribute to dehydration and kidney failure in a person who is not healthy (like Ms.

breathing and her kidneys failed because of poor oral intake that caused her potassium to go up which also increased because of acidosis in conjunction with her medication. This, in turn, caused a heart attack and near death. Her heart attack, kidney damage, hospitalization and follow up dialysis treatment and resulting medical treatment, including discharge to a skilled nursing facility and resulting medical bills were directly caused by these violations of the standard of care.

---

Jones). For instance, matformin usage in a patient who is dehydrated is known to be associated with metabolic acidosis.